IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROCKINGHAM CASUALTY COMPANY, <br> as Subrogee of Joseph A. George <br> 633 East Market Street <br> Harrisonburg, VA  22801 <br><br> Plaintiff, <br><br> vs. <br><br> FLUIDMASTER, INC. <br> 30800 Rancho Viejo Road <br> San Juan Capistrano, CA 92675 <br><br> Defendant. | ) <br> ) <br> ) <br> ) CIVIL ACTION NO. _____, <br> ) <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

### JURISDICTION

1.	At all times material hereto, the Plaintiff, Rockingham Casualty Company (hereinafter "Rockingham") was and is a corporation duly organized and existing under the laws of the State of Virginia having a principal place of business at 633 East Market Street, Harrisonburg, Virginia 22801 and at all times material hereto, was duly authorized to issue insurance policies in the Commonwealth of Pennsylvania.

2.	At all times material hereto, the Defendant, FluidMaster, Inc., (hereinafter "FluidMaster") was and is a corporation organized under the laws of the State of California, having its principal place of business at 30800 Rancho Viejo Road, San Juan Capistrano, CA 92675.

3.	This Court has jurisdiction over this matter under 28 U.S.C. §1332 *et seq.* because the parties are diverse and the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy Five Thousand ($75,000.00) Dollars in value.

:160641.1

4.     Venue is proper in this judicial district because the events giving rise to the Plaintiff's cause of action occurred in this Judicial District.

## STATEMENT OF FACTS

5.     At all times material hereto, Rockingham was the property insurance carrier for Joseph A. George and had issued a homeowner's policy of insurance to Joseph A. George covering residential property located at 2928 Haven Point Drive, New Castle, Lawrence County, PA 16105 (hereinafter referred to as "the premises").

6.     At all times material hereto, Defendant was engaged in the business of, *inter alia* designing, manufacturing, distributing and selling products used in the plumbing industry including, but not limited to, stainless steel braided water supply lines including one that was purchased and installed under a vanity in an upstairs bathroom at the premises owned by Plaintiff's subrogor, Joseph A. George.

7.     At all times material hereto, the subject water supply line was used solely in the manner and for the purpose for which it was designed, manufactured, distributed and sold.

8.     The subject water supply line designed and manufactured and placed in the stream of commerce by the Defendant reached the premises without substantial change in its condition and was not altered or modified prior to or during its use.

9.     On or about December 18, 2009, the Plaintiff's subrogor returned home from work and discovered that the aforementioned water supply line under the bathroom vanity had burst allowing water to flow throughout the home thereby causing extensive damage to the premises.

10.    The subject water leak was caused by the improper design, manufacture and sale of the water supply line by FluidMaster.

:160641.1

11. Pursuant to its policy of insurance, Rockingham has made payments in the amount of $210,786.53 for the damages sustained as a result of the aforesaid water supply line rupture and resulting water leak.

12. Pursuant to the principals of legal and equitable subrogation, as well as the terms and conditions of its policy of insurance, Rockingham is subrogated to the rights of its insured to the extent of its payments.

**COUNT I**
**STRICT LIABILITY**

13. Paragraphs 1 through 12 are hereby incorporated by reference as if the same were more fully set forth herein.

14. At the time of its distribution, the water supply line manufactured by FluidMaster contained the defects more specifically set forth hereinafter and the water supply line reached its destination without substantial change in its condition and was not altered or modified prior to or during its use.

15. The water supply line, including its component parts, was defective and unreasonably dangerous for its intended use in that the water supply line was placed into the stream of commerce even though, through normal use, the water supply line would operate in such a fashion as to crack and/or deteriorate, thereby creating an unreasonable risk of injury and damage to consumers.

16. The water supply line was defective and unreasonably dangerous for its intended use in that it was placed into the stream of commerce without any warnings being provided to the consumer of the possibility of deterioration and cracking or of the manner in which such risk could be avoided.

:160641.1

17. The water supply line, including its component parts, was defective and unreasonably dangerous for its intended use in violation of the Restatement of Torts (Second) 402(A) as the stainless steel braided water supply line contained the following defects:

    a. It was defectively designed in such a fashion that it allowed leaking to occur which could result in property damage;

    b. It was defectively designed such that it had a propensity to corrode and fracture in the presence of low levels of many common household products;

    c. It was defectively designed by using a grade of stainless steel which is susceptible to corrosion and fracture and in using a low pressure rated inner water carrying tubing which will herniate and rupture when the exterior stainless steel braiding ruptures;

    d. It was designed, manufactured and distributed with no accompanying warnings and/or inadequate warnings regarding the water supply lines propensity to crack and deteriorate and without notice as to how such an occurrence could be avoided;

    e. It was designed, manufactured and distributed with no warnings and/or inadequate warnings to inform consumers that water leaks could occur thereby causing substantial property damage;

    f. It was designed, manufactured and distributed using technology which failed to conform to the state-of-the-art when a feasible alternative and safer design existed and when the use of such technology would have eliminated or substantially reduced the effects of the defective conditions listed herein;

    g. It was defectively designed in that it was inadequately assembled, inspected and/or tested for its contemplated and intended use.

18. The aforementioned defects or defective conditions existed at the time the water supply line left the possession and/or control of the Defendant and were latent defects unknown to Rockingham and/or its insured and were not discoverable by any such parties in the exercise of ordinary care.

:160641.1

19.     The defective and unreasonably dangerous condition of the water supply line as aforesaid was the direct and proximate cause of the water leak and the damages sustained by Rockingham and its insured.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $210,786.53, plus interest, costs and all further relief as the Court may deem appropriate.

## COUNT II
### NEGLIGENCE

20.     Paragraphs 1 through 19 above are hereby incorporated by reference as if the same were more fully set forth herein.

21.     The design, manufacture, distribution and/or introduction into the stream of commerce of the water supply line by FluidMaster in its defective and unreasonably dangerous condition constitutes a breach of the duty to exercise reasonably prudent and ordinary care owed by the Defendant to consumers and specifically to the Plaintiff, Rockingham and its insured.

22.     The Defendant acted negligently and failed to exercise due and reasonable care under the circumstances by designing, manufacturing, distributing and selling the subject water supply line using a grade of stainless steel which is susceptible to corrosion and fracture and in using a low pressure rated inner water carrying tubing that will herniate and rupture when the exterior stainless steel braiding support is lost thereby causing the damage to the premises owned by Plaintiff's Subrogor, Joseph A. George.

23.     Additionally, on the date of the occurrence herein and for a substantial period of time prior thereto, it is believed and therefore averred that FluidMaster knew and was aware of a risk of water leaks associated with its water supply lines and failed to take any action, remedial or otherwise, to alter the defective design, guard against the defective condition, or properly warn

:160641.1

consumers about the risk of water leaks associated with its product, all with conscious disregard of the health, safety and well-being of its consumers.

24. The aforementioned negligence and carelessness on the part of FluidMaster was the direct and proximate cause of the water leak and the damages sustained by Rockingham and its insured.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $210,786.53, plus interest, costs and all further relief as the Court may deem appropriate.

## COUNT III
## BREACH OF WARRANTY

25. Paragraphs 1 through 24 are hereby incorporated by reference as if the same were more fully set forth herein.

26. Through its design, manufacture, distribution and sale of the subject water supply line, Defendant impliedly represented and warranted that the water supply line and its component parts had been properly and reasonably designed, manufactured and assembled and that they were of merchantable quality and they were fit for their intended purpose.

27. Plaintiff's Subrogor reasonably relied upon these implied representations and warranties of Defendant, FluidMaster.

28. Defendant breached its warranty of merchantability and fitness for intended purpose by distributing and selling the subject water supply line which was installed in the residence of Plaintiff's Subrogor that was unmerchantable and unsafe for the ordinary purpose for which such product was used and intended thereby allowing the line to rupture causing damage to the premises of Plaintiff's Subrogor.

:160641.1

29.   Defendant's breaches of its implied warranties of merchantability and fitness for intended use were the direct and proximate cause of the water leak and damages sustained by Plaintiff and its insured.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $210,786.53, plus interest, costs and all further relief as the Court may deem appropriate.

Date: October 27, 2010

Respectfully submitted,

ROBB LEONARD MULVIHILL LLP

*[signature]*

Rhonda J. Sudina, Esquire
Attorney for Plaintiff,
Rockingham Casualty Company, As Subrogee of Joseph A. George

:160641.1